**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DICKLA GAINES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-25-661-R** |
| | ) | |
| **HALLIBURTON ENERGY SERVICES, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

Plaintiff brought this action asserting claims for personal injuries she incurred after Defendant's employee struck her car. During this action's pendency, Plaintiff filed for bankruptcy, which resulted in discharge of her debts. Defendant filed a Motion for Summary Judgment [Doc. No. 20] asserting Plaintiff should be judicially estopped from proceeding with this action due to her failure to disclose her personal injury claims as an asset in her bankruptcy filings. The Motion was fully briefed [Doc. Nos. 23, 24] when the Supreme Court issued an opinion directly affecting the law governing judicial estoppel. In light of this development, the Court ordered supplemental briefing from the parties, and Defendant accordingly filed a Supplemental Motion for Summary Judgment [Doc. No. 26]. Plaintiff responded [Doc. No. 27] and Defendant replied [Doc. No. 28]. The matter is now at issue.

## FACTUAL BACKGROUND[1]

A motor vehicle collision occurred between Plaintiff and one of Defendant's employees on June 1, 2021. Def.'s Br., Doc. No. 20 ¶ 1 (citing Pet., Doc. No 1-2).[2] Plaintiff filed a Petition in state court asserting claims for personal injuries against Defendant pursuant to the doctrine of respondeat superior. *Id.* ¶ 2; Pet. ¶ 2. Defendant removed the matter to this Court in June of 2025. Def.'s Br. ¶ 4 (citing Notice of Removal, Doc. No. 1).

Plaintiff filed a Chapter 7 Voluntary Petition for Individual in the United States Bankruptcy Court for the Western District of Oklahoma on January 14, 2026. *Id.* ¶ 6; Bankr. Pet., Doc. No. 20-3; Hopper Aff., Doc. No. 20-1 ¶ 3. Plaintiff retained separate legal

---

[1] "The brief in opposition to a motion for summary judgment . . . shall begin with a section responding, *by correspondingly numbered paragraph*, to the facts that the movant contends are not in dispute and shall state any fact that is disputed." LCvR56.1(c). Plaintiff did not include such a section in her brief, instead stating she does not dispute the procedural chronology enumerated by Defendant. Instead, she "disputes . . . Defendant's characterization of these facts." Pl.'s Resp. in Opp'n, Doc. No. 23, 3. "All material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule." LCvR56.1(e). Accordingly, the Court deems the facts enumerated in Defendant's brief admitted.

Plaintiff did, however, enumerate additional facts in her brief, which Defendant does not explicitly dispute but rather argues do not preclude summary judgment because they are non-material, unsupported by the record, or self-serving legal conclusions. The Court will consider Plaintiff's assertions of fact related to the procedures in the bankruptcy case and this case undisputed for purposes of the motion. FED. R. CIV. P. 56(e)(2). At bottom, and additionally with respect to additional facts discussed in the supplemental briefing, neither party appears to dispute the facts themselves, but instead whether the facts indicate Plaintiff's omission of this lawsuit from her bankruptcy disclosures was inadvertent or not. The Court will, of course, draw all justifiable inferences in Plaintiff's favor as it examines the parties' arguments and the factual record on this point.

[2] Citations to the supplemental briefing will be distinguished as "Suppl."

counsel for her Bankruptcy Case. Pl.'s Br., Doc. No. 23 ¶ II.A; Gaines Aff., Doc. No. 23, 13, ¶ 3; *see also* Bankr. Pet., 7. In her bankruptcy filings, Plaintiff was asked whether she had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment" and was provided with the following examples: "Accidents, employment disputes, insurance claims, or rights to sue." Def.'s Br. ¶ 7; Schedule A/B: Property, Doc. No. 20-3, 14, ¶ 33. Plaintiff answered "No" in response to that inquiry. *Id.*; Def.'s Br. ¶ 7. In her Statement of Financial Affairs, Plaintiff was asked: "Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?" Statement Fin. Affs., Doc. No. 20-3, 41. Though she answered "Yes," she only disclosed a garnishment action filed against her in Caddo County. *Id.*; Pl.'s Br. ¶ II.C; Notice Bankr. Case, Doc. No. 20-2. Plaintiff declared under penalty of perjury that the information in her Bankruptcy Petition was true and correct. Def.'s Br. ¶ 8; Bankr. Pet., 6. On January 14, 2026, Notice of the Bankruptcy Case was issued to Plaintiff's creditors. Def.'s Br. ¶ 9; Notice to Creditors, Doc. No. 20-4.

On January 21, 2026, Plaintiff sat for a deposition in this case to testify about her personal injury claims. Def.'s Suppl. Br., Doc. No. 26, 2; Gaines Dep., Doc. No. 26-1.

A Meeting of Creditors was held on February 11, 2026, wherein Plaintiff was examined. Def.'s Br. ¶ 10; Bankr. Dkt. Rep., Doc. No. 20-5, 2; Bankr. Meeting Tr., Doc. No. 26-2.[3] At the meeting, Bankruptcy Trustee Kim Kramer asked Plaintiff the following questions:

---

[3] The court takes judicial notice of matters of public record in Plaintiff's bankruptcy case. *In re Dickla C. Gaines*, No. 26-10090, Bankr. W.D. Okla. (Jan. 14, 2026).

> **Ms. Kim Kramer:** . . . Have you ever filed bankruptcy before?
>
> **Ms. Dickla Gaines:** No, ma'am.
>
> . . .
>
> **Ms. Kim Kramer:** And do you anticipate becoming entitled to any inheritance or windfall in the next six months?
>
> **Ms. Dickla Gaines:** No, ma'am.
>
> **Ms. Kim Kramer:** Is there anyone that you could sue or have a claim against?
>
> **Ms. Dickla Gaines:** No, ma'am.
>
> . . .
>
> **Ms. Kim Kramer:** And it looks like you've got a '95 Oldsmobile; is that correct? Oh, that's not running.
>
> **Ms. Dickla Gaines:** The '85.
>
> **Ms. Kim Kramer:** Oh, '85 it says.
>
> **Ms. Dickla Gaines:** Yes, ma'am.
>
> **Ms. Kim Kramer:** And then do you—that's not running. So how are you getting around? Do you own a vehicle, another vehicle?
>
> **Ms. Dickla Gaines:** No, ma'am. . . .

*Id.*, 3-5.

The Bankruptcy Trustee thereafter filed a Report of No Distribution indicating there was no property available for distribution from Plaintiff's estate over and above that exempted by law. Def.'s Br. ¶ 10; Bankr. Dkt. Rep., 2-3. An Order of Discharge was entered on April 14, 2026. Def.'s Br. ¶ 12; Discharge Order, Doc. No. 20-6; Bankr. Dkt. Rep., 3.

Defense counsel in this action did not learn of the Bankruptcy Case until April 13, 2026, when, while preparing Defendant's Final Witness and Exhibit List, she came across a Notice of Bankruptcy Case filed in the Caddo County garnishment action. Def.'s Br. ¶ 5; Hopper Aff. ¶ 2; Notice Bankr. Case. On April 15, defense counsel notified Plaintiff's

counsel of the Bankruptcy Case, which was the first Plaintiff's counsel had heard of it. Def.'s Br. ¶ 13; Pl.'s Br. ¶ II.A; Hopper Aff. ¶ 8.

Plaintiff asserts that she did not know and was never told her personal injury lawsuit was an asset required to be disclosed in her bankruptcy case and that she "was not intentionally trying to hide the lawsuit from anyone." Gaines Suppl. Aff., Doc. No. 27-1 ¶¶ 5-6. She states she never disclosed her personal injury lawsuit to her bankruptcy lawyer because she did not know it needed to be disclosed. *Id.* ¶ 6; Gaines Aff. ¶ 5. She further asserts that she understood the Bankruptcy Trustee's question, "Is there anyone that you could sue or have a claim against?" as asking whether Plaintiff had any claims she might bring against someone in the future. Gaines Suppl. Aff. ¶ 7. She asserts that if the Trustee had asked whether she had sued or was suing anyone, or whether she had been hurt in an accident, she would have disclosed her personal injury lawsuit. *Id.* ¶ 8. Plaintiff further states that she has asked her bankruptcy attorney to take steps to reopen her bankruptcy case in order to disclose the personal injury lawsuit. Gaines Aff. ¶ 9. Plaintiff made this assertion on May 1, 2026. *Id.*, 14. The Bankruptcy Docket does not reflect any such steps have been taken since. *In re Gaines*, No. 26-10090.

Defendant has moved for summary judgment, asserting Plaintiff's failure to disclose the instant action in the Bankruptcy Case should result in her being judicially estopped from proceeding with her personal injury claims against Defendant.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id.* at 670-71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citing FED. R. CIV. P. 56(e)).

At this stage, the court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249-52. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## DISCUSSION

The purpose of judicial estoppel is "'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007)

(quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)), *abrogated on other grounds by Keathley v. Buddy Ayers Constr., Inc.*, 146 S. Ct. 1532 (2026). "[T]he circumstances under which a court might invoke judicial estoppel will vary," but courts typically rely on three factors to determine whether to apply it. *Eastman*, 493 F.3d at 1156 (quoting *New Hampshire*, 532 U.S. at 750-51).

> First, a party's subsequent position must be "'clearly inconsistent'" with its former position. *New Hampshire*, 532 U.S. at 750. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled[.]" *Id.* (emphasis added) (internal quotations omitted). Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped. *Id.* at 751.

*Id.* (citations modified).[4]

Plaintiff does not dispute that the first factor—whether she adopted inconsistent positions by failing to disclose this action in her Bankruptcy Case—is satisfied. The Tenth Circuit has "explained that failing to disclose a potential claim as an asset is clearly inconsistent with then prosecuting an action in pursuit of that claim." *See Anderson v. Seven Falls Co.*, 696 F. App'x 341, 345 (10th Cir. 2017) (unpublished) (quoting *Eastman*, 493 F.3d at 1158; *Queen v. TA Operating, LLC*, 745 F.3d 1081, 1090 (10th Cir. 2013); *Paup v. Gear Prods., Inc.*, 327 F. App'x 100, 106-07 (10th Cir. 2009) (unpublished)). Here, Plaintiff's position in the Bankruptcy Case (that she had no pending legal claims and had

[4] In the absence of argument or authority to the contrary, the Court will apply federal judicial estoppel principles here. In any event, Oklahoma state principles appear to be largely the same. *See, e.g.*, *Birr v. Hampton*, 484 P.3d 1030, 1033-34 (Okla. Civ. App. 2021).

not recently been party to a lawsuit) is clearly inconsistent with her active pursuit of legal claims in this Court. *Id.* at 346.

The second factor asks whether Plaintiff "'has succeeded in persuading a court to accept [her] earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 750). Defendant asserts this factor is satisfied because the Bankruptcy Court granted Plaintiff a discharge while relying on her representations that she had no assets in the form of legal claims. Plaintiff disagrees, arguing in a perfunctory manner that there is no evidence the Bankruptcy Trustee, who determined no estate property was available for creditors, would have concluded differently had she known of the instant lawsuit.

For the second factor to be satisfied, "[t]he party must have 'success' in the prior proceeding." *Id.* (citing *New Hampshire*, 532 U.S. at 750-51) (stating "the question [] is whether the [] failure to disclose [a] . . . personal injury claim to the bankruptcy court persuaded the bankruptcy court to adopt the [plaintiffs'] position that theirs was a no asset case"). "Our concern is not so much with whether [Plaintiff] acted with some nefarious motive as it is with whether her actions led the bankruptcy court 'to accept [her] position, so that judicial acceptance of an inconsistent position in a later proceeding' would introduce the 'risk of inconsistent court determinations and thus pose . . . [a] threat to judicial integrity.'" *Paup*, 327 F. App'x at 107 (quoting *New Hampshire*, 532 U.S. at 750, 751).

"A bankruptcy court accepts a debtor's position as to the value of her estate when it grants a discharge based on that debtor's disclosures." *Anderson*, 696 F. App'x at 346

(citing *Eastman*, 493 F.3d at 1160); *see also Paup*, 327 F. App'x at 107 (bankruptcy court accepted plaintiff's inconsistent position, creating perception that it was misled, where it discharged plaintiff's debts after adopting trustee's conclusions that plaintiff had no assets); *Queen*, 734 F.3d at 1091-92 (same where bankruptcy court granted discharge based on filings which significantly undervalued plaintiffs' pending personal injury lawsuit); *Clute v. Murray Womble, Inc.*, No. 18-CV-90-JED-FHM, 2019 WL 238152, at *3 (N.D. Okla. Jan. 16, 2019) (same where trustee reported no property was available for distribution, a finding "undoubtedly based on Plaintiff's submitted asset schedule," and the bankruptcy court discharged plaintiff's debts based on the report); *Gifford v. Lowe's Home Ctrs., LLC*, No. 20-CV-00102-GKF-CDL, 2022 WL 501743, at *4 (N.D. Okla. Jan. 5, 2022) (same). The Court finds the Bankruptcy Court accepted Plaintiff's position, thus creating the perception that it was misled, when it granted her a no-asset discharge based on her disclosures, which omitted the instant lawsuit. *Anderson*, 696 F. App'x at 346.

The third factor asks whether Plaintiff would gain an unfair advantage if not estopped. The Tenth Circuit has found this test "clearly satisfied" where plaintiffs received a discharge in bankruptcy based on their representations that they had no pending legal claims. *See id.* at 347 (citing *Eastman*, 493 F.3d at 1159-60); *see also Eastman*, 493 F.3d at 1159-60 (plaintiff gained unfair advantage over creditors where he "received the benefit of a discharge [in a no asset bankruptcy case] without ever having disclosed his pending personal injury action against Defendants"); *Queen*, 734 F.3d at 1092 (plaintiffs "derived a substantial unfair advantage because the bankruptcy trustee relied on [their]

misrepresentations and determined that there were no assets available for distribution to the creditors") (quotation omitted); *Clute*, 2019 WL 238152, at *3 (same).

The *Queen* plaintiffs argued they would not gain any unfair advantage by proceeding with their personal injury claims because their lawsuit would have been exempt from distribution under the California Code of Civil Procedure. *Queen*, 734 F.3d at 1092. The Tenth Circuit disagreed, finding the Code only exempted personal injury claims up to the amount necessary for support, an amount plaintiffs' claims far exceeded. *Id.* at 1092-93. "Thus, if the [plaintiffs] had provided the bankruptcy court with an accurate disclosure of their claims against [the defendant] and the estimated value of those claims, they may not have received a no-asset discharge." *Id.* The Tenth Circuit thus found the *Queen* plaintiffs would gain an unfair advantage if they were not estopped.

Plaintiff similarly claims (without support) that there would be no unfair advantage because her creditors would have received nothing regardless of whether she disclosed the instant lawsuit. But Defendant points to OKLA. STAT. tit. 31, § 1(A)(21),[5] which states:

> Except as otherwise provided in this title . . . the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided: . . .
>
> Such person's interest in a claim for personal bodily injury, death or workers' compensation claim, for a net amount not in excess of Fifty Thousand Dollars ($50,000.00), but not including any claim for exemplary or punitive damages.

---

[5] "The Bankruptcy Code allows debtors to exempt property from the bankruptcy estate, but 11 U.S.C. § 522(b)(2) permits states to opt out of the federal exemptions and substitute their own." *In re Glapion*, BAP No. WO-19-030, 2020 WL 486865, at *2 (B.A.P. 10th Cir. Jan. 30, 2020) (unpublished). Oklahoma has opted out and "codified its own exempt property rules." *Id.* (citing OKLA. STAT. tit. 31, § 1(B)).

*See In re Cella*, 128 B.R. 574, 578 (Bankr. W.D. Okla. 1991) (where debtor claimed as exempt "the entire proceeds from a workers' compensation award and the settlement received from a tortfeasor's insurance carrier," the court indicated "[a]ny amount in excess of $50,000.00 does not appear to be exemptible under any cited Oklahoma or federal law," including § 1(A)(21)).

In the absence of persuasive argument or authority to the contrary, it appears that Plaintiff's claims exceed the amount that would be exempt by at least $25,000. *See* Pet. If she had disclosed her claims and their estimated value to the Bankruptcy Court, she may not have received a no-asset discharge. *Queen*, 734 F.3d at 1093. If not estopped, Plaintiff would gain an unfair advantage because she obtained a discharge based on her position that she did not possess any legal claims. The third factor is satisfied.[6]

[6] Plaintiff's attempts to reopen her Bankruptcy Case "do[] not correct the fact that the bankruptcy court was misled," *Anderson*, 696 F. App'x at 346, or "mitigate the unfair advantage." *Gifford*, 2022 WL 501743, at *4. "Allowing [Plaintiff] to 'back up' and benefit from the reopening of [her] bankruptcy only after [her] omission ha[s] been exposed would suggest that a debtor should consider disclosing potential assets only if [she] is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." *Eastman*, 493 F.3d at 1160 (quotation omitted); *see also Anderson*, 696 F. App'x at 346 (quoting *Eastman*, 493 F.3d at 1160) (quotation omitted) (That "'[the debtor]'s bankruptcy was reopened and his creditors were made whole once his omission became known is inconsequential. A discharge in bankruptcy is sufficient to establish a basis for judicial estoppel, even if the discharge is later vacated.'"). The Court does not find Plaintiff's as-yet unsuccessful attempts to reopen her Bankruptcy Case mitigate the unfair advantage she gained from her omission. However, the Court notes the importance of considering such attempts when determining whether Plaintiff's omission was inadvertent or a mistake and discusses Plaintiff's asserted attempts at correction below.

However, "'inadvertence or mistake' can function as an exception" to the application of judicial estoppel. *Keathley*, 146 S. Ct. at 1539. Prior to *Keathley*, the Tenth Circuit applied a rule wherein "an omission [is considered] to be inadvertent only if the debtor lacked knowledge of the underlying claim or had no potential motive to conceal the claim." *Id.* at 1538. But the Supreme Court has characterized such rigid rules as "incompatible with an inadvertence-or-mistake standard." *Id.* at 1540. In so finding, the Court established that to "determine whether an omission was inadvertent or mistaken for purposes of judicial estoppel, courts should look to the totality of the circumstances surrounding the omission." *Id.* at 1536. The Court will look to the case law of the circuits who have historically utilized the totality-of-circumstances test when determining whether to apply the "inadvertence or mistake" exception to judicial estoppel.[7]

In *Martineau v. Wier*, 934 F.3d 385, 395 (4th Cir. 2019), the Fourth Circuit noted the possibility of mistake was "especially high with respect to a failure to disclose an as-yet purely hypothetical legal claim." The Fourth Circuit considered "the course of subsequent bankruptcy proceedings," remarking that the plaintiff had amended her disclosures, the bankruptcy trustee had abandoned the claims, and the bankruptcy court did not appear to "believe [the plaintiff] acted in bad faith" because it did not sanction her. *Id.* at 395-96.[8]

---

[7] The Supreme Court cited the following Court of Appeals cases as examples of courts utilizing "more fact-specific inquir[ies that] do not so stringently limit the [inadvertence-or-mistake] analysis." *Keathley*, 146 S. Ct. at 1538 n.4.

[8] The Court remanded the case to the district court, which found that because the plaintiff-debtor had reopened her bankruptcy case and amended her disclosures, she was no longer

In *Stanley v. FCA US, LLC*, 51 F.4th 215 (6th Cir. 2022), the court noted it was clear the plaintiff knew of the facts underlying his undisclosed claims because he'd been involved in a grievance procedure related to those claims when he signed his bankruptcy petition. *Id.* at 219. The court also found he had motive to conceal those claims because disclosing them could have resulted in less favorable bankruptcy terms.[9] *Id.* at 220. The Sixth Circuit asked "whether the omission was made in bad faith," highlighting important factors such as "[e]vidence of attempts to correct the omission" and "the accuracy, timing, and effectiveness of corrective disclosures." *Id.* at 221 (citations and quotations omitted). The Court found judicial estoppel proper because the plaintiff's corrective disclosures were perfunctory and only occurred after opposing counsel asked about the omission. *Id.* And though the Sixth Circuit found it "troubling that [plaintiff] was represented by counsel in both his bankruptcy case and this case, but [] nonetheless wound up in this position," it found plaintiff's claims of ignorance related to disclosure requirements unavailing, stating "ignorance of the law is generally not an excuse." *Id.* (citation and quotations omitted).

In *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014), the Seventh Circuit highlighted plaintiff's undisputed testimony that she had disclosed her claims in the bankruptcy case and was not then directed to amend her schedules. *Id.* at 544-48

---

"taking inconsistent factual positions" or gaining any unfair advantage. *Martineau v. Wier*, 485 F. Supp. 3d 637, 645 (D.S.C. 2020).

[9] "[T]he Tenth Circuit has recognized that a debtor has a motive to conceal an asset in proceedings before a bankruptcy court in order to 'receive a full discharge in bankruptcy before proceeding with the lawsuit, because this would allow [him] to pursue an award for damages without the risk that any of the award would go to [his] creditors.'" *Gifford*, 2022 WL 501743, at *6 (quoting *Queen*, 734 F.3d at 1094).

(distinguishing cases wherein debtors made affirmative misrepresentations to the trustee or creditors).[10] The Court stated "[h]onest mistakes and oversights are not unheard of. That's one reason why trustees meet with debtors. The disclosures in the initial filings are not necessarily final on this issue. . . . For judicial estoppel to apply, [the defendant] needed to show more than an initial nondisclosure on a bankruptcy schedule." *Id.* at 548.

And in *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1185 (11th Cir. 2017), the court identified factors to consider under the totality-of-circumstances inquiry:

> the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.

Here, Plaintiff relies almost exclusively on her lack of sophistication or legal knowledge to argue that her failure to disclose the instant case was inadvertent. Indeed, "some debtors, particularly those proceeding *pro se*, may not realize that a pending lawsuit qualifies as a 'contingent and unliquidated claim' that must be disclosed on a schedule of assets." *Id.* at 1186. But some courts have found that "assertions of lack of sophistication and legal ignorance are unreasonable to demonstrate inadvertence . . . [when the] plaintiff [is] represented by counsel in both her bankruptcy and [the instant] matter[]." *Garrett v. Univ. Hosps. of Cleveland, Inc.*, No. 1:12 CV 2371, 2013 WL 2186116, at *6 (N.D. Ohio

---

[10] The plaintiff also provided a transcript from the meeting of creditors wherein she informed the trustee about her employment lawsuit—though the court stated it would not consider the transcript in the appeal. *Spaine*, 756 F.3d at 545.

May 21, 2013); *see also Callahan v. Emory Healthcare, Inc.*, No. 1:18-CV-4856-WMR-JSA, 2019 WL 12405937, at *10 (N.D. Ga. Dec. 20, 2019) (stating courts typically weigh the sophistication factor against plaintiffs who are represented by bankruptcy counsel), *R&R adopted in* 2020 WL 10110993 (Jan. 7, 2020); *Timmons v. Scotch Plywood Co.*, No. 18-0152-WS-N, 2019 WL 3468209, at *2 (S.D. Ala. July 31, 2019) (applying judicial estoppel and noting "plaintiff was represented by bankruptcy counsel, so he was not left to navigate the bankruptcy system unaided"); *Eastman*, 493 F.3d at 1159 ("A large portion of debtors who file for chapter 7 bankruptcy surely are as 'unsophisticated' and 'unschooled' as [Plaintiff], yet have little difficulty fully disclosing their financial condition to the bankruptcy court. [Plaintiff's] assertion that he simply did not know better and his attorney 'blew it' is insufficient to withstand application" of judicial estoppel.).[11] Additionally, some courts find "ignorance of the law is no excuse" in contexts akin to the one here. *Carr v. Beverly Health Care & Rehab. Servs., Inc.*, No. C-12-2980 EMC, 2013 WL 5946364, at *6 (N.D. Cal. Nov. 5, 2013) (quotations omitted) (finding this principle particularly applicable where the plaintiff "was represented by counsel during bankruptcy proceedings"); *see also Stanley*, 51 F.4th at 221.

Moreover, "'the district court is not required to accept as true the plaintiff's own denial of his intent to make a mockery of the judicial system.'" *Reshetnichenko v. Starnet*

[11] Some courts also consider "in [a plaintiff's] favor whether she 'told [her] bankruptcy attorney about the civil claims before filing the bankruptcy disclosures.'" *Wholesalecars.com v. Hutcherson*, 2:16-cv-00155-KOB, 2018 WL 1509509, at *5 (N.D. Ala. Mar. 27, 2018) (quoting *Slater*, 871 F.3d at 1185). Here, Plaintiff avows she did not tell her bankruptcy attorney about her personal injury claims due to her lack of understanding. This factor is at most neutral.

*Ins. Co.*, No. 1:22-CV-29 (LAG), 2024 WL 5439689, at *5 (M.D. Ga. Mar. 28, 2024) (quoting *Harewood v. Miami-Dade Cnty.*, 780 F. App'x 748, 751 (11th Cir. 2019) (unpublished)); *Moore v. Hernandez*, 128 F. App'x 39, 41 (10th Cir. 2005) (unpublished) ("While it is true . . . that the court may not resolve disputed facts on summary judgment, it is not required to accept the non-movant's self-serving and conclusory assertions.").

Furthermore, the Court "must not refrain from examining the evidence altogether." *Id.* (quoting *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 557 (10th Cir. 1998)). In doing so, even in light of Plaintiff's assertions of her own lack of sophistication, the Court finds no rational finder of fact could conclude that Plaintiff's omission was inadvertent.

For instance, Plaintiff answered "No," when the Bankruptcy Trustee asked, "Is there anyone that you could sue or have a claim against?" Courts weigh dishonesty during bankruptcy creditor meetings against a finding of inadvertence. *See, e.g.*, *Wholesalercars.com*, 2018 WL 1509509, at *6. Plaintiff claims that she understood the question to have been about *future* claims she could assert, particularly in light of the previous question about whether she anticipated any forthcoming windfalls. The Court finds Plaintiff's argument on this point unpersuasive. *See id.* ("The question ['are you suing anyone for any reason?'] was not a trick question. If she did not understand the direct and straightforward question, she should have asked for clarification.").

This argument is even less convincing when one considers the Plaintiff's assertions that had the Bankruptcy Trustee referred to Item 33 on the Bankruptcy Schedules, which "identifies '[a]ccidents' and 'rights to sue' as examples of claims requiring disclosure[, a]ny of those questions would have revealed this lawsuit in a single answer. Had one been asked,

Ms. Gaines would have answered yes." Pl.'s Suppl. Br., 5. But Plaintiff *was* asked about accidents and rights to sue when she completed her bankruptcy schedules—yet, under penalty of perjury, and despite the fact that she was involved in this case at the time she filled out her bankruptcy filings, she answered "No." She does not meaningfully explain this misunderstanding. *See Vaughn v. EquityExperts.org, Midwest, LLC*, No. 1:21-cv-291, 2023 WL 8786234, at *5 (S.D. Ohio Dec. 19, 2023) (noting it was not plausible that plaintiff's non-disclosure was "inadvertent or the result of forgetfulness" for several reasons, including the fact that she was "actively participating in [the undisclosed] litigation . . . at the same time she sought bankruptcy protection").

Furthermore, though Plaintiff claims she has asked her bankruptcy counsel to move to reopen her bankruptcy case to disclose this lawsuit, such efforts only came after Defendant pointed out the omission. *See Stanley*, 51 F.4th at 221 ("[M]erely allowing a bankruptcy petitioner to avoid judicial estoppel by correcting omissions after an opposing party notifies them of the same would encourage gamesmanship and defeat the purpose of [judicial estoppel]."); *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 272 (9th Cir. 2013) (noting that a "key factor is [whether] Plaintiff reopened her bankruptcy proceedings and filed amended bankruptcy schedules that properly listed [her] claim as an asset"). Moreover, though Plaintiff insists her request for such a reopening is pending, four months have passed and the bankruptcy record does not reflect that any such steps have been taken. *See Stanley*, 51 F.4th at 221 (finding plaintiff's "perfunctory" attempts at correction did "not demonstrate an absence of bad faith" omission). Plaintiff has not offered

evidence that any meaningful attempts at correction have occurred, and the Court is unable to conclude that this factor weighs in her favor.

Moreover, Plaintiff disclosed another lawsuit—albeit the garnishment action that was, as Plaintiff characterizes it, the direct impetus for her bankruptcy filing—in her bankruptcy schedules.[12] *See, e.g.*, *Harewood*, 2018 WL 1156010, at *5 ("Plaintiff identified other civil lawsuits in the . . . Bankruptcy Proceedings yet still failed to disclose the present action in his initial filings."); *see Vaughn*, 2023 WL 8786234, at *5 (noting the same).

Under the totality of the circumstances, and drawing all justifiable inferences in Plaintiff's favor, the Court finds that on this record, no rational factfinder could conclude Plaintiff's failure to disclose her legal claims to the Bankruptcy Court was inadvertent.

Plaintiff argues applying judicial estoppel would not protect any creditor but would rather provide Defendant with a windfall. Indeed, "[b]ecause the application of judicial estoppel may harm innocent creditors, equitable principles dictate that courts proceed with care and consider all the relevant circumstances." *Slater*, 871 F.3d at 1188. But even if Defendant "may have a windfall," *Eastman*, 493 F.3d at 1158 (quotation omitted), "judicial estoppel is foremost designed to protect the federal judicial process" and "'prevent

[12] Plaintiff argues her "voluntary" disclosures at the creditors' meeting regarding her garnishment action and the year of her car indicate the record is inconsistent with concealment. Bankr. Meeting Tr., 4-5. But these disclosures arguably would have reduced the value of her assets, and the Court is unconvinced this weighs in Plaintiff's favor. *See Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 800 (D.C. Cir. 2010) (plaintiff could not avoid judicial estoppel by claiming inadvertence, noting that he had disclosed other pending lawsuits that "unlike the instant[, undisclosed] case, reduced the overall value of his assets through wage garnishment"). Even considering this, the Court finds no rational finder of fact could conclude Plaintiff's omissions were the result of inadvertence or mistake.

improper use of judicial machinery.'" *Id.* at 1156 (quoting *New Hampshire*, 532 U.S. at 749-50).

> A debtor, once he files for bankruptcy, disrupts the flow of commerce and promptly benefits from an automatic stay. *See* 11 U.S.C. § 362. The debtor then receives the ultimate benefit of bankruptcy when he receives a discharge. A chapter 7 discharge . . . relieves the debtor of any obligation to pay outstanding debts. *See id.* § 727(b). This in the aggregate drives up interest rates and harms creditworthy borrowers. . . . In exchange for these benefits, the bankruptcy code required only that [the debtor] fully and accurately disclose his financial status.

*Eastman*, 493 F.3d at 1159 (citation omitted).

"Just as equity frowns upon a plaintiff's pursuit of a claim that he intentionally concealed in bankruptcy proceedings, equity cannot condone a defendant's avoidance of liability through a doctrine premised upon intentional misconduct without establishing such misconduct." *Slater*, 871 F.3d at 1187-88. Having examined the totality of the circumstances, the Court concludes no reasonable fact-finder could conclude Plaintiff's omissions were inadvertent or a mistake, and thus that judicial estoppel is appropriate here.

Defendant also asserts summary judgment is proper because Plaintiff is not the real party in interest. Plaintiff does not meaningfully dispute this assertion.

The Bankruptcy Code requires a Chapter 7 Trustee to "collect and reduce to money the property of the estate for which [the] trustee serves. . . ." 11 U.S.C. § 704(a)(1). Section 541(a)(1) defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Plaintiff filed this lawsuit before she sought the bankruptcy court's protection. Accordingly, this lawsuit and its claims were property of the estate. *See In re Hedged-Invs. Assocs., Inc.*, 84

F.3d 1281, 1285 (10th Cir. 1996) (causes of action belonging to debtor at commencement of bankruptcy case fall within definition of estate property under § 541(a)(1)); *In re White*, 297 B.R. 626 (Bankr. D. Kan. 2003) (cause of action for injuries resulting from pre-petition two-car accident was property of estate). Property that is not scheduled, such as Plaintiff's claims herein, is neither administered nor abandoned when the bankruptcy case is closed. *See Brumfiel v. U.S. Bank*, 618 F. App'x 933, 937 (10th Cir. July 24, 2015) (unpublished) (citing 11 U.S.C. § 554(d)); *In re Riazuddin*, 363 B.R. 177, 184 (B.A.P. 10th Cir. Feb. 12, 2007). Accordingly, Plaintiff's claims remain the property of the bankruptcy estate and the Trustee is the real party in interest with the exclusive authority to maintain the claims. *Id.*

The Court's conclusion that the Trustee is the real party in interest implicates FED. R. CIV. P. 17(a)(3), which provides, "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Courts in the Tenth Circuit have indicated that even when a plaintiff is judicially estopped, the bankruptcy trustee should be given time to decide whether to intervene in the district court action. *See Clute*, 2019 WL 238152, at *4 (discussing *Eastman*, 493 F.3d at 1155 n.3) (finding "no reason to apply judicial estoppel against [the] bankruptcy trustee, if he . . . chooses to pursue this claim" because there was no indication the trustee had engaged in contradictory litigation tactics); *Gifford*, 2022 WL 501743, at *7 (same).

Defendant does not argue the Bankruptcy Trustee should be estopped from pursuing Plaintiff's claims, nor does the record reflect any contradictory litigation tactics on behalf of the Trustee. The Court thus sees no reason to apply judicial estoppel against the Trustee.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff, who is judicially estopped from pursuing her claims. However, the Court will allow Plaintiff's bankruptcy trustee sixty days to intervene as the real-party-in-interest before entering judgment and terminating the case. Plaintiff is thus ordered to provide a copy of this Order to the Bankruptcy Trustee.

IT IS SO ORDERED this 31st day of August, 2026.

David L. Russell
**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**